Filed in Open Court
07/24/2025
Skyler B. O'Hara
M. Garrett
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>EZEQUIL AVILES CASTRO,<br>a.k.a. Ezequil Castro Aviles,<br><br>Defendant. | Case No. 23-20045-08-DDC |

**PLEA AGREEMENT PURSUANT TO FEDERAL RULE
OF CRIMINAL PROCEDURE 11(c)(1)(C)**

The United States of America, by and through Assistant United States Attorney Trent M. Krug, the defendant, Ezequil Aviles Castro, personally and with his counsel, Angela Rae Keck, hereby enter into the following plea agreement pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure:

1. **Defendant's Guilty Plea.** The defendant agrees to plead guilty to Count 1 of the Indictment. Count 1 charges a violation of Title 21, U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C)(viii), that is, conspiracy to distribute and possess with intent to distribute methamphetamine, a controlled substance. By entering into this Plea Agreement, the defendant admits to knowingly committing the offense, and to being guilty of the offense. The defendant understands that the maximum sentence which may be imposed as to Count 1 of the Indictment to which he has agreed to plead guilty is not more than 20 years imprisonment, a fine not to exceed $1 million, a term of supervised release of at least 3 years, and a $100.00 mandatory special assessment. The defendant further agrees to not contest the forfeiture allegation, as fully set forth in ¶ 9.

Ver. 03-01-24

2. **Factual Basis for the Guilty Plea.** The parties agree the facts constituting the offense to which the defendant is pleading guilty are as follows:

In January 2020, the Kansas City FBI Transnational Organized Crime (TOC) Squad initiated an investigation targeting the methamphetamine distribution activities of the Jose Santos Macias Roman Drug Trafficking Organization (DTO). Investigators learned the Macias Roman DTO orchestrated the transportation of liquid methamphetamine from Sinaloa, Mexico to the Kansas City, Kansas area, using a variety of methods. From February 1, 2020, and continuing to July 26, 2023, FBI Kansas City utilized a Confidential Human Source (CHS) to conduct multiple controlled methamphetamine purchases directly from the main target, Jose Santos Macias Roman, and members of Macias Roman's organization.

During the ongoing investigation, FBI KC, along with Kansas City, Kansas Police Department's Drug Enforcement Unit (DEU), JCDTF, DEA, and HSI members seized over 10 kilograms of methamphetamine and identified members of the Macias Roman DTO. The investigation resulted in the identification of two stash house locations and a methamphetamine conversion lab. Through CHS reporting, investigators learned the Macias Roman DTO members converted the liquid methamphetamine into crystal methamphetamine and then distributed the finished product to customers in the Kansas City, Kansas area. During debriefs, the FBI CHS said Macias Roman oversaw the logistics of renting/maintaining stash houses and converting the liquid into crystal methamphetamine for the DTO. Macias-Roman's partner, Juan Ramirez Gonzalez a.k.a. Juanillo, and others, were in charge of distributing the drugs in both Kansas City, Kansas, and Missouri.

As the investigation continued, FBI agents identified Ezequil Aviles Castro a.k.a. Ezequil Castro Aviles (hereafter referred to as "the defendant") as a Macias Roman DTO member. Controlled evidence purchase operations, surveillance, and FBI CHS reporting led FBI investigators to identify 341 S. 9th Street, Kansas City, Kansas as a house utilized by the DTO to convert liquid methamphetamine and store the finished product. During the subsequent investigation, agents placed a pole camera in the vicinity of 341 S. 9th Street, Kansas City, Kansas – the primary residence of Juan Ramirez Gonzalez a.k.a. Juanillo and the defendant. Investigators utilized a FBI CHS to conduct two controlled methamphetamine purchases with Juan Ramirez Gonzalez a.k.a. Juanillo on March 23, 2022 (approximately 1009.6 grams) and May 2, 2023 (approximately 2014.9 grams) in Kansas City, Kansas.

After reviewing the pole camera footage at 341 S. 341 S. 9th Street, agents observed the defendant coming and going from the residence and surrounding property, including the backyard (where agents subsequently located a methamphetamine conversion lab in a backyard shed on August 3, 2023). Between July 5, 2023 and July 29, 2023 (on approximately eleven occasions), agents observed the defendant enter and exit the residence, as well as operate multiple vehicles associated to the address.

On July 27, 2023, a federal indictment/arrest warrant was issued (Case No. 23-20045-08-DDC/ADM) for the defendant's involvement with a Conspiracy to Distribute Methamphetamine and Possession with Intent to Distribute Methamphetamine charge. On August 3, 2023, investigators observed the defendant exit the 341 S. 9th Street, Kansas City, Kansas residence. Soon thereafter, an unknown individual, driving a yellow van, stopped and picked the defendant up. Based on the outstanding federal warrant, Kansas City, Kansas Police Department officers conducted a traffic stop on the yellow van in the area of South 10th and Central Avenue in Kansas City, Kansas. After contacting the defendant, officers placed him under arrest for the outstanding

warrant. Investigators recovered an Apple iPhone from the defendant's person and subsequently obtained a search warrant for the phone's contents. Extractions from the phone revealed the defendant communicated with others about money wire transfers and methamphetamine distribution activities.

On August 3, 2023, investigators executed a search warrant at the defendant's residence (341 S. 9th Street, Kansas City, Kansas) after his arrest. During the search, FBI agents recovered a methamphetamine conversion lab (located in a shed in the backyard) that contained approximately 17.8 kilograms of crystal methamphetamine. During the search, investigators also seized an unknown amount of liquid methamphetamine, approximately $23,507 in U.S. currency, and two handguns. Subsequent to the search warrant's execution, agents conducted witness interviews and learned the defendant was one of a select few DTO members (including Juan Ramirez Gonzalez a.k.a. Juanillo) who had access to, and control of, the locked shed where the methamphetamine conversion lab was located. Investigators learned the defendant inherited more responsibility for the methamphetamine conversion lab's operation and maintenance after Juan Ramirez Gonzalez a.k.a. Juanillo sustained a leg injury during the summer of 2023. During that time period, agents observed (via the pole camera at 341 S. 9th Street) that Ramirez Gonzalez used crutches to walk, which limited his (Ramirez Gonzalez's) ability to perform operational tasks for the lab.

The investigation revealed the defendant, and co-defendants, conspired and agreed with each other, and other persons, to distribute and possess with intent to distribute methamphetamine, a controlled substance, from February 1, 2020 to July 26, 2023, in the District of Kansas and elsewhere. The investigation into the defendant's involvement with this DTO's drug-trafficking activities established the defendant served as an operational link in the distribution conspiracy at issue. The defendant admits and agrees that the quantity of methamphetamine he and his co-conspirators possessed and distributed during the scope of the conspiracy was reasonably foreseeable to him.

3. **Proposed Rule 11(c)(1)(C) Sentence.** The parties propose, as an appropriate disposition of the case:

(a) a range of 168 to 180 months in prison on Count 1;

(b) 5 years of supervised release (eligible for deportation);

(c) no fine; and

(d) the mandatory special assessment of $100.00; and

(e) imposition of a forfeiture judgment [contained in the Indictment's Forfeiture Notice], as outlined in ¶ 9.

The parties seek this binding plea agreement as an appropriate disposition of the case, because if the Court permits itself to be bound by the proposed sentence, it brings certainty to the

sentencing process; it assures that the defendant and the government will benefit from the bargain they have struck; it serves the interests of justice; and it assures a sentence consistent with the sentencing factors of 18 U.S.C. § 3553(a). If the Court does not agree with the sentence, the defendant and United States may be restored to the positions they maintained prior to reaching this plea Agreement. This plea agreement centers on the defendant's agreement to enter his guilty plea as soon as the Court's schedule permits, thereby preserving valuable Court, prosecution, defense, United States Probation Office, United States Marshals' Service and other law enforcement resources.

4. **Application of the Sentencing Guidelines.** The parties are of the belief that the proposed sentence does not offend the advisory sentencing guidelines. Because this proposed sentence is sought pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the parties are not requesting imposition of an advisory guideline sentence.

5. **Government's Agreements.** In return for the defendant's plea of guilty as set forth herein, the United States agrees to dismiss any remaining counts of the Indictment at the time of sentencing and agrees to not file any additional charges against the defendant arising out of the facts forming the basis for the present Indictment.

6. **Consequences for Violating the Plea Agreement.** The United States' obligations under this plea agreement are contingent upon the defendant's continuing to manifest an acceptance of responsibility. If the defendant denies or gives conflicting statements as to his involvement, falsely denies or frivolously contests relevant conduct the Court determines to be true, willfully obstructs or impedes the administration of justice, as defined by U.S.S.G. § 3C1.1 (or willfully attempts to do so), or has engaged in additional criminal conduct, the United States reserves the right to petition the Court for a hearing to determine if he has breached this plea agreement.

4

If the Court finds by a preponderance of the evidence that the defendant (1) has breached or violated this plea agreement; (2) has willfully obstructed or impeded the administration of justice, as defined by U.S.S.G. § 3C1.1 (or willfully attempted to do so); (3) has engaged in additional criminal conduct; or (4) has otherwise failed to adhere to this plea agreement's terms, this plea agreement will be deemed null and void, and the United States may pursue any additional charges arising from the criminal activity under investigation, as well as any charges for any perjury, false statement, or obstruction of justice that may have occurred.

If the Court finds the defendant has violated this plea agreement, he understands and agrees that all statements he made, any testimony he gave before a grand jury or any tribunal, or any leads from such statements or testimony, shall be admissible against him in any and all criminal proceedings. The defendant waives any rights which might be asserted under the United States Constitution, any statute, Federal Rule of Criminal Procedure 11(f), Federal Rule of Evidence 410, or any other federal rule that pertains to the admissibility of any statements he made subsequent to this plea agreement.

7.  **Whether to Accept the Proposed Plea Agreement and Sentence is Up to the Court.** The Court has no obligation to accept the proposed plea agreement and sentence. It is solely within the Court's discretion whether to accept the proposed binding plea agreement as an appropriate disposition of the case.

8.  **Withdrawal of Plea Permitted Only if the Court Does Not Accept the Plea Agreement and Proposed Sentence.** If the Court agrees to be bound by the proposed plea agreement and sentence, the parties shall be bound by all the terms of the proposed plea agreement and the defendant will not be permitted to withdraw his guilty plea. If the Court announces that it will NOT be bound by the proposed plea agreement, the parties agree that at that time either party may withdraw the proposed plea agreement, and if either does so, then all parties will be restored

to the positions they were in prior to the entry of the defendant's plea. If neither party elects to withdraw the proposed plea agreement at the time the Court announces that it will not be bound, and before the Court proceeds with sentencing, then the parties shall be bound by all the terms of the proposed plea agreement and the defendant will not be permitted to withdraw his guilty plea.

9. **Forfeiture of Assets.** The defendant knowingly and voluntarily agrees and consents to the imposition of a forfeiture money judgment against him, which is an amount equal to the amount of gross proceeds obtained or derived by him from the commission of the charged offenses. Prior to sentencing, the parties anticipate entering into a Forfeiture Agreement and filing the document with the Court. The defendant knowingly and voluntarily waives his right to a trial regarding forfeiture, and voluntarily waives all constitutional, legal and equitable defenses to the imposition of a forfeiture judgment. The defendant acknowledges and agrees that the imposition of a forfeiture judgment shall not be deemed an alteration of the defendant's sentence or this agreement, and shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon him in addition to forfeiture.

10. **Payment of Special Assessment.** The defendant understands that a mandatory special assessment of $100.00 per count of conviction will be entered against him at the time of sentencing. The defendant agrees to deliver to the Clerk of the United States District Court payment in the appropriate amount no later than the day of sentencing. The defendant has the burden of establishing an inability to pay the required special assessment. The parties acknowledge that if the Court finds the defendant is without resources to pay the special assessment at the time of sentencing, the Court may allow payment during his period of incarceration.

11. **Waiver of Appeal and Collateral Attack.** The defendant knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this

6

prosecution, his conviction, or the components of the sentence to be imposed herein, as well as the length and conditions of supervised release. The defendant is aware that 18 U.S.C. § 3742 affords him the right to appeal the conviction and sentence imposed. By entering into this agreement, the defendant knowingly waives any right to appeal a sentence imposed in accordance with the sentence recommended by the parties under Rule 11(c)(1)(C). The defendant also waives any right to challenge his sentence, or the manner in which it was determined, or otherwise attempt to modify or change his sentence, in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C. § 2255 (except as limited by *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001)), or a motion brought under Federal Rule of Civil Procedure 60(b). In other words, the defendant waives the right to appeal the sentence imposed in this case, except to the extent, if any, the Court imposes a sentence in excess of the sentence recommended by the parties under Rule 11(c)(1)(C). However, if the United States exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may appeal the sentence received, as authorized by 18 U.S.C. § 3742(a). Notwithstanding the foregoing waivers, the parties understand that the defendant in no way waives any subsequent claims with regards to ineffective assistance of counsel or prosecutorial misconduct.

12. **FOIA and Privacy Act Waiver.** The defendant waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552. The defendant further waives any rights conferred under the Privacy Act of 1974, 5 U.S.C. § 552a, to prevent or object to the disclosure of records or materials pertaining to this case.

13. **Full Disclosure by United States.** The defendant understands the United States will provide to the Court and the United States Probation Office all information it deems relevant

7

to determining the appropriate sentence in this case. This may include information concerning his background, character, and conduct, including the entirety of his criminal activities. The defendant understands these disclosures are not limited to the count to which he is pleading guilty. The United States may respond to comments he or his attorney makes, or to positions he or his attorney takes, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The defendant also has the right to provide information concerning the offense and to make recommendations to the Court and the United States Probation Office.

14. **Deportation Consequences.** Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which he is pleading guilty. (Because defendant is pleading guilty to conspiracy to distribute and possess with intent to distribute methamphetamine, removal is presumptively mandatory.) Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including his attorney or the Court, can predict to a certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty, regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

15. **Parties to the Agreement.** The defendant understands this plea agreement binds only him and the United States Attorney for the District of Kansas, and that it does not bind any other federal, state, or local prosecution authority.

16. **Voluntariness of Guilty Plea.** The defendant has had sufficient time to discuss this case, the evidence, and this Plea Agreement with his attorney and he is fully satisfied with the

advice and representation his attorney provided. Further, the defendant acknowledges that he has read the Plea Agreement, understands it, and agrees it is true and accurate and not the result of any threats, duress or coercion. The defendant further understands that this Plea Agreement supersedes any and all other agreements or negotiations between the parties, and unless subsequently supplemented in writing with the joint approval of the parties, this Plea Agreement embodies each and every term of the agreement between the parties. The defendant acknowledges that he is entering into this Plea Agreement and is pleading guilty because he is guilty. He further acknowledges that he is entering his guilty plea freely, voluntarily, and knowingly.

_____   Date: 7/23/25
TRENT M. KRUG
Assistant United States Attorney
United States Attorney's Office
500 State Avenue, Suite 360
Kansas City, KS 66101
(913) 551-6730
(913) 551-6541 (fax)
Trent.Krug@usdoj.gov

_____   Date: 7/23/25
D. CHRISTOPHER OAKLEY
Assistant United States Attorney
Supervisor
United States Attorney's Office
500 State Avenue, Suite 360
Kansas City, KS 66101
(913) 551-6730
(913) 551-6541 (fax)
Chris.Oakley@usdoj.gov

_____   Date: 7/23/5
AARON SMITH
Criminal Chief

9

_____          Date: 7-24-25
EZEQUIL AVILES CASTRO
Defendant


_____          Date: 7-24-25
ANGELA RAE KECK
Angela Keck Law Offices, LLC
8101 College Blvd., Suite 100
Overland Park, Kansas 66210
(913) 424-4190
(888) 823-4007 (fax)
Email: Achievingjustice@gmail.com
Counsel for Defendant Ezequil Aviles Castro

10